## McKinney & Heller *versus* Brights.

One partner without the consent of his co-partner, has no right to give to his own separate creditor an order on a debtor of *the firm ;* and the fact that the other partner knew of the order before it was executed and did not express his dissent to the defendants in whose favor it was drawn, and who received the same and its produce, was held not to be a defence to a recovery from the latter, by the firm, of the amount of the order. Notice was unnecessary, as the persons receiving the order had no right to presume the consent of the other partner to a misapplication of the partnership property; and the defendants knew that the firm was not liable for their claim against the individual partner.

ERROR to the Common Pleas of *Berks county :*

This was an appeal from the judgment of a justice of the peace, in a suit by McKinney & Heller, partners, against A. & F. Bright. The plea was *non assumpsit.* A verdict was rendered for the defendants.

The plaintiffs were partners in a clothing store. John Darrah owed them upwards of $100—in payment of which debt they were to take brick. *McKinney* drew an order in the name of the firm, on account of his own separate debt, in favor of the defendants, on Darrah, for brick, to the amount of about $90. Darrah delivered to defendants the brick in payment of the debt *he owed McKinney & Heller,* which debt the defendants agreed to settle with them. To recover from the defendants the amount of the brick thus delivered on the order of the plaintiffs, this action was brought.

The defendants took defence that they were not bound to pay

the amount claimed, but that they had a right to retain the same in payment of the separate debt that McKinney owed them.

The following evidence was given on the part of the plaintiffs on the trial :—

John Darrah, sworn :—I know that McKinney & Heller, the plaintiffs, were partners in the clothing business ; I got clothes from them, and they got bricks from me. Our agreement was that I was to get clothing from them, and they were to take bricks in payment, whenever they could sell them. I was indebted to them about $130 or $140. A. & F. Bright, the defendants, presented an order of McKinney & Heller on me for bricks ; I gave them bricks on that order ; I don't recollect the amount ; I think they got bricks for $160 ; they got bricks to an amount exceeding their order ; the excess above the order they paid me for ; and the balance they agreed to settle for with McKinney & Heller ; this balance was about $89.

On the part of defendants was given in evidence, record of a suit, McKinney & Heller *v.* John Darrah ; in the Court of Common Pleas of Berks county :—

John Darrah, again :—I was sued by McKinney & Heller for their bill ; the clothing was included, for which their order was given on me in favor of the Brights for the bricks. I got credit in that suit for the bricks I had given to the Brights on the order. I furnished these bricks to the Brights on the order of McKinney & Heller. *Heller* heard of the order which was drawn *by McKinney* in the name of the firm, a day or two after I got it. He said to me that it was not right, or that he did not know of it ; the amount of what he said was, that he did not think the order was right.

Cross-examined :—The award against me was for the balance I owed McKinney & Heller, after paying their order to the Brights. I never heard the two Brights say they would pay McKinney & Heller. The objection of Heller was, that the Brights had no right to take a partnership order and get the bricks on it as payment of McKinney's individual debt to them. He said they should not keep the price of the bricks for that purpose. I was a witness in this suit before arbitrators. I did not hear McKinney say, in Heller's presence, that he would give Brights an order, but he told me so before he gave it to me. I was indebted to McKinney & Heller about $130 or $140. The $89, I suppose, was paid them by the bricks I gave on their order to the Brights. The award was for $20, and the excess was paid by some other bricks McKinney & Heller had got from me.

George G. Barclay, sworn :—I was an arbitrator in the case of McKinney & Heller *v.* John Darrah. The plaintiff's claim was over $100. It was suggested to the counsel of the plaintiffs, that he might proceed against the Brights for the amount of

the order produced in their favor on Darrah, and drawn in the name of the plaintiffs. The counsel acted on the suggestion, and allowed the amount of the order to be deducted from the plaintiff's claim, and we rendered an award for the balance in favor of the plaintiffs.

GORDON, President J., charged:—This is an action brought to recover the price of a quantity of brick, furnished to the defendants by John Darrah, on the order of the plaintiffs. The order is not produced, but it is agreed here that it was for about ninety dollars, and that it was drawn by McKinney, one of the firm, on John Darrah, a debtor of the firm, in the name of both the partners. From the evidence it appears that John Darrah was indebted to McKinney & Heller, and that McKinney was indebted to the defendants. The order was drawn by *McKinney* and delivered to the Brights *in part payment of the debt due from him to the Brights.* The plaintiffs in this suit allege that McKinney had no right to apply the debt due from John Darrah, which was the property of the firm, to the payment of his own individual debt, and that such misapplication being known to the defendants, they are liable to the firm in this action for the amount received by them on the order. The law is, that one partner cannot apply the partnership property to the discharge of his own debts ; and the creditor who receives such funds, with knowledge of the facts, is liable to repay them to the partners, in an action instituted in the partnership name. In the case before us, however, the defendants allege that Heller, the partner, had knowledge of the order drawn by McKinney on Darrah, in the name of the firm, and that although he made some objections to it in conversation with Darrah, he gave no peremptory instructions to Darrah on the subject ; that he did not forbid Darrah to furnish bricks to the defendants on the order, nor give notice to the defendants of his dissent to this application of the partnership fund. These facts seem to be established by the evidence of Darrah, who has been examined here as a witness ; but whether it be or not, is for you to decide, as are all the facts of the case. If Heller knew of the order on Darrah before it was executed by Darrah, and did not give notice to the defendants of his dissent from such application of the partnership funds, he is bound by the order, and the plaintiff cannot recover. The defendants might not have been willing to take bricks on any other terms than those upon which these were understood by them to be received, and if they had been apprized of his partner's dissent, they might have resorted to McKinney for payment of, or security for their debt.

To this opinion of the court the plaintiffs by their counsel excepted.

It was assigned for error :

The court erred in charging the jury that, if Heller knew of

the order on Darrah before it was executed by Darrah, and did not give notice to the defendants of his dissent from such application of the partnership funds in payment of the private debt of McKinney, he is bound by the order, and the plaintiffs cannot recover.

*Banks* and *Smith*, for plaintiff in error.—When a note is taken by any one in the partnership name from one of the firm, for what he knows to be his particular debt, without consulting or apprising the other members of his intention, or obtaining their consent, the firm is not bound: Livingston *v.* Haste & Patrick, 2 *Caines's Rep.* 249.

When a note is given in the name of a firm by one of the partners, for the private debt of such partner, and known to be so by the person taking the note, the other partners are not bound by such note unless they have been previously consulted and consent to the transaction: 3 *Pick.* 10.

The knowledge of the creditor that the partnership name is given for the individual debt of the partner renders the transaction fraudulent and void in respect to the co-partnership: Livingston *v.* Roosevelt, 4 *Johns. Rep.* 272; 7 *Wend. Rep.* 326.

One partner cannot apply partnership funds or securities to the discharge of his own private debt, without the consent of the other members of the firm. Without their consent their title to the property is not divested in favor of such separate creditor; the right of such separate creditor depends upon the fact that the other partners had assented to such transaction: Rogers *v.* Batchelor, 12 *Peters's Rep.* 232.

In the case of a partner paying his own private debt out of partnership funds, it is manifest that it is a violation of his duty and of the right of his partners, unless they have assented to it. The act is an illegal conversion of the funds, and the separate creditor can have no better title to the funds than the partner himself had. If the separate creditor knew of the misappropriation, he would undoubtedly be guilty of a gross fraud, not only in morals, but in law: Rogers *v.* Batchelor, 12 *Peters's Rep.* 230.

The separate creditor must show the assent of the whole firm, or they are not bound when he has obtained partnership property for the private debt of one of the firm: Dob *v.* Halsey, 16 *Johns. Rep.* 34; Rogers *v.* Batchelor, 12 *Peters* 231.

The burden of proving that the partner who did not sign the note consented to be bound, is thrown on the creditor: *Story on Partnership,* sec. 127, note i. sec. 132 and 133, (note 2, at page 218.)

If the separate creditor of a partner take a partnership security towards the discharge of his separate debt, that fact alone, unless explained by particular circumstances, is conclusive evidence to

[McKinney & Heller v. Brights.]

charge the creditor with fraud or with gross negligence amounting to fraud: *Collyer on Part.*, Perkins's edition, sec. 496 and 501, note 1.

A creditor who receives partnership property to pay a private debt of one of the partners, becomes a debtor to the firm for the property; and the burden of proving the assent of the other partner is thrown on the creditor who thus receives the property: *Collyer on Part.*, Perkins's edition, sec. 501, notes 1 and 2, note 1 at page 462; Davenport v. Runlet, 3 *New Hamp.* 386; Weed v. Richardson, 2 *Dev. & Bat.* 535; Pierce v. Pass, 1 *Porter* 232; *Story on Part.* sec. 133; Dobbs v. Halsey, 16 *Johns. Rep.* 34, 38; Gansevort v. Williams, 14 *Wend.* 133–5; Wilson v. Williams, *id.* 146; Darling v. March, 22 *Maine* 189.

A partner has no power to bind the firm for his own private debt, without the assent of his co-partners: Noll v. McClintock, 2 *W. & Ser.* 152. It is not doubted that a partner cannot pay his separate debt with the joint funds, though the creditor may not suspect a misapplication: 1 *Barr* 417, Tanner v. Hall & Easton; 6 *Barr* 494, Purdy v. Powers.

The case of Foster v. Andrews, 2 *Pa. Rep.* 160, is relied on by the defendants in error. In that case it is said, "If the other partner were present and permitted it to be done, it would bind both. So, if it has met his subsequent assent." There the transaction took place in the store of the firm, and it was done by the clerk of the firm, who was the agent of the firm. It was entered on the books of the firm. There the whole transaction appeared. On this same page, immediately under these entries, William Foster, the objecting partner, had made entries. He must have seen the entries made by his clerk and agent. He made no objections to the clerk or any one. Was not this evidence of his subsequent assent? Surely it was. This was the ruling of the judge, and is the law of the case. It does not decide that the absent partner must give notice of his dissent, or he is bound. In that case, assent might be inferred—here it cannot be inferred. Heller objected at once. His entire conduct shows continued dissent. Was he bound to give notice of his dissent? It is submitted to the court that he was not.

*Filbert*, for defendant, presented the following positions:—

1. That the objecting partner had notice of the order drawn by McKinney, it being entered on the firm's books on the day or shortly after it was drawn and delivered to the defendants.

2. That on principles of fairness, the objecting partner in possession of such knowledge was bound to countermand the said order, as well with Darrah on whom the order had been drawn, as with the defendants in whose favor it was drawn, and which Heller neglected to do: 2 *Pa. Rep.* 160, Foster v. Andrews.

[McKinney & Heller *v.* Brights.]

3. If from all the circumstances, the objecting partner has the necessary knowledge of such an order, and does nothing to countermand and defeat it, the jury may presume that he intends to acquiesce in it, and an attempt after the order has been filled and received, cannot meet with favor from a court and jury: Noble *v.* McClintock, 2 *W. & Ser.* 152.

4. The *onus* of proving assent and acquiescence by the other partner is not always thrown on the separate creditor ; but if it appears from the circumstances that such acquiescence was fairly presumable, and the jury so find it, as they have done in this case, the losing party cannot complain : *id.*

5. A separate creditor receiving the firm's property in payment of his debts, does not thereby commit a fraud *per se*, on the partnership: and if he can show knowledge, acquiescence, and a culpable want of vigilance in the objecting partner, he will not become a debtor to the firm so as to be compelled to refund.

6. A partner may take the funds and property of the partnership, to pay his private debts, provided he keeps within the bounds of honesty and justice towards his co-partner and the creditors of the firm; and the law will correct and interfere only in cases of gross and palpable dishonesty, amounting to fraud.

7. If it is insisted, as it appears to be, that the defendants are liable to the plaintiffs on the ground of *mala fides* or fraud, then the suit, being in contract, brought originally before a justice of the peace, will not lie, and the plaintiffs, on a reversal here, could not recover below.

5 *Watts* 159, Fichthorn *v.* Boyer, as to assent to a sealed instrument. ·

The opinion of the court was delivered June 30, by

GIBSON, C. J.—McKinney was separately indebted to the defendant, and Darrah was indebted to the firm of McKinney & Heller. *McKinney* drew an order in the name of the firm, in favor of the defendants, on Darrah for bricks, which were delivered. After an unsuccessful action against Darrah on his original indebtedness, the firm brought this suit, to follow the property into the defendant's hands, on the ground that it was received *mala fide.* The defence is that *Heller* was apprized of the order before the bricks were delivered, and did not give notice to the defendants that he would not be bound by it. Want of notice not to deliver might have been ground of defence by Darrah ; but why should Heller have given notice to the defendants of what they already knew? In Northouse *v.* Parker, 1 *Camp.* 82, it was held that notice would be superfluous where the fact is known. The defendants knew that Heller was not liable for McKinney's debt, and they had no reason to presume that McKinney would consent to have it paid out of the partnership effects, to the prejudice of himself and the joint cre-

[McKinney & Heller v. Brights.]

ditors.  They acted at their peril and with their eyes open.  With full knowledge of the circumstances they dealt with one of the partners to get their debt paid at the expense of Heller, and they now complain of want of notice that he would not consent to it. Was it necessary to give them notice that they were attempting to do him an injury ?  Notice that a man will not submit to a wrong, would be absurd.  The defendants had no ground to presume that Heller had authorized McKinney to draw in their favor, for there is no circumstance in the case to found a presumption, and it was their business to inquire.  If they took McKinney's word for it they must take the consequences.  When told of the order before the bricks were delivered, Heller told Darrah that it was wrong. But if the defendants gave a receipt for the separate debt, or delivered up the security for it when the order was drawn, notice would have been too late to save them; and if they did not, a recovery in this suit would leave their right of recourse to McKinney intact, and the parties would be remitted to the position which justice requires them to occupy.  In any aspect whatever, the defendants have no case.

Judgment reversed.